1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

JOEL GUILLEN,

Case No.:  25-cv-1555-RSH-MMP

12

Plaintiff,

13

v.

14

CITY OF CHULA VISTA, et al.,

15

Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR ALTERNATIVELY FOR A MORE DEFINITE STATEMENT**

16
17

[ECF No. 8]

18
19
20

Before the Court is a motion to dismiss or alternatively for a more definite statement

21

filed by defendants City of Chula Vista ("City") and Chula Vista Police Department officer

22

Federico Dominguez ("Dominguez") (collectively "Defendants"). ECF No. 8. Pursuant to

23

Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution

24

without oral argument. For the reasons below, the Court grants in part and denies in part

25

Defendants' motion.

26

**I.    BACKGROUND**

27

**A.    Plaintiff's Allegations**

28

The instant civil rights action arises from Plaintiff's arrest in connection with

1

criminal proceedings brought against his brother. Plaintiff's First Amended Complaint (ECF No. 7, "FAC") alleges as follows.

### 1.    Arrest of Plaintiff's Brother

On January 11, 2024, Plaintiff's brother, Daniel Guillen ("Daniel"), was arrested on charges of assault, corporal injury to spouse, and spousal rape. FAC ¶ 22. The charges stemmed from incidents that occurred in May 2023 and October 2023 between Daniel and his wife, Y.G. *Id.* Defendant Dominguez served as the lead detective in this investigation. *Id.* ¶ 32.

### 2.    Telephone Calls

According to the FAC, after being placed in custody, Daniel called Plaintiff multiple times and pressured him to reach out to Y.G. and persuade her to "drop the charges." *Id.* ¶¶ 26, 28–29. Plaintiff alleges Daniel told him to "act emotional," suggested that he personally appeal to Y.G. or ask other family members to convince her not to testify, and instructed Plaintiff to take Y.G. to Tijuana if she would not recant her story. *Id.* ¶¶ 28, 41. Plaintiff further alleges Daniel told him to "keep tabs" on Y.G., but that he refused to do so. *Id.* ¶ 41. According to the FAC, Daniel also called Y.G. asking her to help get him out of jail. *Id.* ¶ 40. The FAC alleges defendant Dominguez wrote a report indicating that Y.G. agreed to try to help Daniel. *Id.*

### 3.    January 29, 2024 Preliminary Hearing

On January 29, 2024, a preliminary hearing was held in Daniel's case. *Id.* ¶ 30. Plaintiff alleges that he picked Y.G. up and drove her to the courthouse. *Id.* According to Plaintiff, Y.G. told him that she had been served with a criminal subpoena and he responded that she should tell the truth regardless of whether this was helpful to his brother. *Id.*

During the preliminary hearing, Plaintiff sat with Y.G. in full view of attorneys and police investigators, including defendant Dominguez. *Id.* ¶ 31. When Y.G. was called to the stand, she invoked the marital privilege and refused to testify. *Id.* ¶ 33. Consequently, the state court judge ordered her to speak to an attorney from the Office of the Alternate Public Defender ("APD") and a victim advocate from the District Attorney's Office. *Id.*

Plaintiff was present in the public hallway with Y.G. as she waited for the attorney and victim advocate. *Id.* The victim advocate spoke to Y.G. while Plaintiff was sitting nearby. *Id.* ¶ 34. An attorney from the APD's Office also approached Y.G. in the hallway to speak with her. *Id.* ¶ 35. When the attorney asked Plaintiff to step away so that he could speak with Y.G. privately, Plaintiff alleges that he did so without argument. *Id.*

The preliminary hearing then resumed with Y.G. now being represented by an attorney from the APD's Office. *Id.* ¶ 36. A victim advocate from the District Attorney's Office was seated next to Y.G. *Id.* Y.G. continued to invoke the marital privilege. *Id.*

The court recessed to allow counsel from the APD's Office an additional opportunity to confer with Y.G. *Id.* When proceedings resumed, Y.G. was eventually held in contempt for refusing to respond to any further questions and ordered to return for contempt proceedings. *Id.* She was also directed to meet with the District Attorney's victim advocate for additional counseling. *Id.*[1]

At the conclusion of the preliminary hearing, the court found sufficient evidence to support the charges against Daniel. *Id.* ¶ 37. An information was filed against him on January 30, 2024. *Id.*

### 4.    *February 2, 2024 Contempt Hearing*

On February 2, 2024, Y.G. and an attorney from the APD's Office appeared for her contempt hearing. *Id.* ¶ 38. Y.G.'s counsel informed the court that her position remained unchanged. *Id.* The court ordered Y.G. to return for the jury trial in Daniel's case, but declined to impose any sanctions. *Id.* Plaintiff alleges he was not present at these contempt proceedings. *Id.*

///

///

---

[1]    Y.G. later had meetings with both the victim advocate and the prosecutor. *Id.* ¶ 36. Plaintiff alleges he was not present at these meetings and made no attempts to prevent Y.G. from attending them. *Id.*

### 5.    *Criminal Charges against Plaintiff*

According to the FAC, on March 7, 2024, defendant Dominguez obtained recordings of the phone calls Daniel had made to Plaintiff and Y.G. *Id.* ¶ 39. Dominguez subsequently signed a criminal complaint averring that Plaintiff had committed two separate violations of California Penal Code section 136.1(b)(2) for attempting to dissuade a victim of a crime from "[c]ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof" during two time periods: (1) May 27, 2023 to January 16, 2024 (Count I); and (2) January 17, 2024 and March 26, 2024 (Count II). *Id.* ¶¶ 44–46.

On March 27, 2024, defendant Dominguez submitted an affidavit in support of Plaintiff's arrest, asserting that Plaintiff, at his brother's direction, had prevented Y.G. from testifying at the January 29, 2024 preliminary hearing. *Id.* ¶ 54. According to Plaintiff, the affidavit contained multiple material misrepresentations, including that: Plaintiff had discouraged Y.G. from testifying at the January 29, 2024 preliminary hearing and sent Y.G. a text message demanding that she "drop the criminal charges." *Id.* ¶¶ 54–55, 79. Plaintiff alleges Dominguez also omitted several key facts in the affidavit, including that: Plaintiff has told his brother he would not be following his instructions during one of the recorded phone calls; that Plaintiff's brother had told him to take Y.G. to Tijuana *before* the January 29, 2024 preliminary hearing and that Plaintiff had drove her to the hearing instead; and that Y.G. had met with the D.A.'s Office victim advocate and her own attorney and continued to refuse to testify at her own contempt hearing even without Plaintiff being present. *Id.* ¶ 79. A warrant was issued thereafter for Plaintiff's arrest. *Id.* ¶ 57.

### 6.    *Plaintiff's Arrest and Preliminary Hearing*

On April 11, 2024, Plaintiff was arrested at the Marine Corps Recruit Depot in San Diego in the presence of his commanding officers and fellow Marine recruits. *Id.* On April 15, 2024, Plaintiff appeared at his arraignment and was denied bail. *Id.* Plaintiff alleges that his court-appointed attorney was then informed that if Daniel pleaded guilty, any charges against Plaintiff would be dismissed. *Id.* ¶ 59. Plaintiff remained in custody until

his preliminary hearing concluded on July 10, 2024. *Id.* ¶ 60. According to the FAC, the state court dismissed the case against Plaintiff for lack of evidence. *Id.* ¶¶ 62–63.

### B.    Procedural Background

On June 17, 2025, Plaintiff filed the instant action. ECF No. 1. On July 29, 2025, Plaintiff filed his FAC, the operative pleading in this case. ECF No. 7. The FAC asserts three causes of action against defendant Dominguez under 35 U.S.C. § 1983 for malicious prosecution, judicial deception, and unlawful seizure. FAC ¶¶ 65–91. The FAC additionally asserts a cause of action for violation of California Civil Code § 52.1 against both Defendants. *Id.* ¶¶ 92–100.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleading facts "'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal

conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

**B.    Motion for a More Definite Statement under Rule 12(e)**

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A Rule 12(e) motion is considered in light of Rule 8's liberal pleading standards." *Jercich v. Cnty. of Merced*, No. 1:06CV00232 OWWDLB, 2006 WL 3747184, at *7 (E.D. Cal. Dec. 19, 2006); *see Advanced Hair Restoration LLC v. Bosley Inc.*, No. C23-1031-KKE, 2024 WL 4544930, at *4 (W.D. Wash. Oct. 22, 2024); *Levy v. FCI Lender Servs., Inc.*, No. 18CV2725-GPC(WVG), 2019 WL 6877596, at *10 (S.D. Cal. Dec. 17, 2019). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. 8(a)(2).

"In assessing a motion under Rule 12(e), a court considers whether the complaint provides the defendant with a sufficient basis to frame a responsive pleading." *Levy*, 2019 WL 6877596, at *10. "A motion for a more definite statement attacks the unintelligibility of the complaint, not simply the mere lack of detail." *Hirschorn v. Kia Am., Inc.*, No. 24-CV-1483-DMS-DDL, 2024 WL 5036656, at *1 (S.D. Cal. Sept. 30, 2024) (internal quotation marks omitted); *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1075 (N.D. Cal. 2016) ("Rule 12(e) motions are ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail.") (internal quotation marks omitted). "Although motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules, they are proper when a party is unable to determine how to frame a response to the issues raised[.]" *Hirschorn*, 2024 WL 5036656, at *1 (internal quotation marks and citations omitted).

///

///

## III. ANALYSIS

### A. Section 1983 Claims

Plaintiff asserts three § 1983 claims against defendant Dominguez for malicious prosecution, judicial deception, and unlawful seizure. FAC ¶¶ 65–91. Defendants move to dismiss all three causes of action for failure to state a claim and on qualified immunity grounds. ECF No. 8-1 at 14–28, 30–32.[2] The Court addresses these arguments, in turn, below.

#### 1. General

"The Civil Rights Act codified in 42 U.S.C. § 1983 provides a cause of action against state officials who deprive a plaintiff of [his] federal constitutional rights." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Id.*

#### 2. Judicial Deception (Claim 2)

In Claim 2 of the FAC, Plaintiff alleges defendant Dominguez submitted an affidavit in support of Plaintiff's arrest containing multiple misrepresentations and omissions, which the state court judge then relied upon in finding probable cause. FAC ¶¶ 77–85. *Id.*[3] Defendants move to dismiss this claim, contending: (1) a judicial deception claim based on the Fourteenth Amendment is improper under these facts; (2) Plaintiff has failed to sufficiently allege defendant Dominguez made any misrepresentations or omissions

---

[2]    All citations to electronic case filing ("ECF") entries refer to the ECF-generated page numbers.

[3]    As Plaintiff's § 1983 claims against defendant Dominguez depend in large part on the affidavit used to secure his arrest warrant, the Court considers Plaintiff's judicial deception claim first.

deliberately or with reckless disregard for the truth; and (3) even if the affidavit were corrected, there would still be a substantial basis for the state court judge to have concluded that probable cause existed for Plaintiff's arrest. ECF No. 8-1 at 19–25.

### a.    Fourteenth Amendment

Defendants first contend Plaintiff's judicial deception claim should be dismissed to the extent it is based upon a violation of the Fourteenth Amendment. ECF No. 8-1 at 21. The Court agrees. Here, Plaintiff's judicial deception claim stems from his arrest, which he alleges was unsupported by probable cause. This claim is more properly brought as an alleged violation of Plaintiff's Fourth Amendment rights. *See Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."). In contrast, a judicial deception claim brought under the Fourteenth Amendment generally arises in child custody proceedings, as such proceedings invoke the Fourteenth Amendment's right to familial association. *See David v. Kaulukukui*, 38 F.4th 792, 800 (9th Cir. 2022) ("[A]s part of the [Fourteenth Amendment] right to familial association, parents and children have a right to be free from judicial deception in child custody proceedings and removal orders.").

### b.    Failure to State a Claim

Defendants next contend Plaintiff has failed to sufficiently allege the elements of a judicial deception claim. ECF No. 8-1 at 21–23.

"To be valid, a warrant for either search or arrest 'must be supported by an affidavit establishing probable cause.'" *Morse v. Cnty. of Merced*, No. 116CV00142DADSKO, 2017 WL 2958733, at *10 (E.D. Cal. July 11, 2017) (quoting *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985)). "An officer effectively usurps a magistrate's—or, in this case, a state court judge's—duty to conduct an independent evaluation of probable cause where he provides 'an incomplete and misleading recitation of the facts[.]'" *Manko v. Cnty. of Los Angeles*, No. 2:23-CV-10709-MRA-SK, 2025 WL 1421910, at *7 (C.D. Cal. Mar. 31, 2025) (quoting *United States v. Perkins*, 850 F.3d 1109, 1118 (9th Cir. 2017)).

"To maintain a false arrest claim for judicial deception, a plaintiff must show that the officer who applied for the arrest warrant 'deliberately or recklessly made false statements or omissions that were material to the finding of probable cause.'" *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011) (quoting *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004)); *see Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021) ("To successfully allege a violation of the constitutional right to be free from judicial deception, [a plaintiff] must make out a claim that includes (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision.").

As detailed above, here, Plaintiff sufficiently alleges Dominguez made multiple misrepresentations and omissions in his affidavit in support of Plaintiff's arrest. FAC ¶¶ 54–55, 79. Plaintiff also adequately alleges that Dominguez acted deliberately or with reckless disregard for the truth. According to Plaintiff, Dominguez knowingly disregarded the lack of evidence supporting Plaintiff's arrest when signing his affidavit, doing so in order to exert pressure on Plaintiff's brother. *Id.* ¶¶ 94, 97.

Finally, Plaintiff sufficiently alleges that the misrepresentations and omissions Dominguez made were material. "To determine the materiality of omitted facts, [courts] consider whether the affidavit, once corrected and supplemented, establishes probable cause. If probable cause remains after amendment, then no constitutional error has occurred." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1084 (9th Cir. 2011) (internal quotation marks and citations omitted). Here, at the pleading stage, the misrepresentations and omissions Plaintiff alleges Dominguez made are the type a court would have deemed material. For example, Plaintiff alleges Dominguez omitted that Plaintiff had told Daniel in a recorded phone conversation he would not follow Daniel's instructions—an omission that, if included—would have undermined probable cause. *See Perkins,* 850 F.3d at 1117–18 ("[A]n affiant can mislead a magistrate [b]y reporting less than the total story, [thereby] . . . manipulat[ing] the inferences a magistrate will draw.") (internal quotation marks omitted).

Defendants respond Plaintiff's allegations lack factual support. ECF No. 8-1 at 23. At this early stage, however, "the record does not allow for consideration of all relevant evidence." *Wheeler v. Broggi*, No. C19-1410-JCC-MAT, 2020 WL 5350641, at *10 (W.D. Wash. Feb. 11, 2020), *report and recommendation adopted*, No. C19-1410-JCC, 2020 WL 2111249 (W.D. Wash. May 4, 2020); *see Morley v. Walker,* 175 F.3d 756, 761 (9th Cir. 1999) ("[D]efendant filed a motion to dismiss, not a summary judgment motion. We must regard all the allegations in [plaintiff]'s complaint as true. Through that lens, the complaint withstands a motion to dismiss."); *Baier v. City of San Diego*, No. 24-CV-00893-AJB-VET, 2025 WL 674575, at *4 (S.D. Cal. Mar. 3, 2025) ("While the parties do not dispute that probable cause is a defense to all of Plaintiff's claim, the Court notes that determination of this issue requires a fact-specific inquiry that is generally premature at the pleading state."); *Ball v. City of Scottsdale,* No. CV 19-05815-PHX-SPL (DMF), 2021 WL 2459844, at *9 (D. Ariz. Apr. 29, 2021) ("At the motion-to-dismiss stage, the Court must accept Plaintiff's allegations as true, and, as alleged, Plaintiff has stated a claim upon which relief may be granted for judicial deception against Defendant[.]").[4]

At this stage of the proceedings, the Court holds that Plaintiff's allegations are sufficient to state a claim for judicial deception against defendant Dominguez. *Kastis v.*

---

[4]    The Court rejects Plaintiff's argument the state court's eventual dismissal of his case precludes Defendants from relitigating whether there was probable cause for his arrest. Under Ninth Circuit precedent, "the mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995); *see Manuel,* 580 U.S. at 368–69 ("Legal process did not expunge [plaintiff]'s Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial detention—probable cause to believe he committed a crime."); *Keel v. City of Los Angeles*, No. 220CV02022CBMKES, 2020 WL 7231120, at *3 (C.D. Cal. Sept. 8, 2020) ("The fact that the charges were later dropped, or that Plaintiff was later proved innocent, is irrelevant to whether Defendants had probable cause at the time they arrested Plaintiff."); *McCrohan v. Richardson*, No. C-94-0143 SI, 1996 WL 116824, at *2 (N.D. Cal. Mar. 11, 1996) (rejecting plaintiff's argument that the fact that charges were later dropped against him necessarily negated the existence of probable cause).

*Alvarado*, No. 118CV01325DADBAM, 2020 WL 2468389, at *4 (E.D. Cal. May 13, 2020) (holding plaintiff had alleged a plausible judicial deception claim where plaintiff "alleged facts—not merely conclusions—to show that defendant [] made deliberately false statements or recklessly disregarded the truth in his search warrant affidavit and that those misrepresentations and omissions were material to the reviewing state court judge's probable cause determination."); *Ball v. City of Scottsdale*, No. CV 19-05815-PHX-SPL (DMF), 2021 WL 2459844, at *9 (D. Ariz. Apr. 29, 2021); *Sigal v. Cnty. of Los Angeles,* No. 217CV04851RGKAGR, 2017 WL 10560532, at *8 (C.D. Cal. Aug. 28, 2017) (holding plaintiffs had alleged a plausible judicial deception claim where they identified the "specific omissions and misrepresentations contained in [defendant social worker]'s warrant application.").[5]

### c.    Conclusion

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 2, to the extent Claim 2 is based on a violation of the Fourteenth Amendment **WITHOUT LEAVE TO AMEND**.[6] The Court **DENIES** Defendants' motion to dismiss Claim 2 in all other respects.

///

---

[5]    In light of the Court's holding, the Court **DENIES** Defendant's request for judicial notice of documents submitted in support of Defendants' probable cause argument. At this stage of the proceedings, the attached documents are not material to the Court's decision. *See Jones v. Best Serv. Co.*, No. CV 14-9872 SS, 2017 WL 490902, at *5 (C.D. Cal. Feb. 6, 2017) (denying request for judicial notice as unnecessary where documents were immaterial to the Court's decision), *aff'd*, 700 F. App'x 580 (9th Cir. 2017).

[6]    "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* Here, the defect in Defendants alleged Fourteenth Amendment judicial deception claim cannot be cured by further amendment.

### 3.    *Malicious Prosecution (Claim 1)*

In Claim 1 of the FAC, Plaintiff asserts a malicious prosecution claim against defendant Dominguez. FAC ¶¶ 65–76. As with Plaintiff's judicial deception claim, Plaintiff's malicious prosecution claim is based on Dominguez's submission of an affidavit containing purportedly materially misleading statements and omissions in support of Plaintiff's arrest. Defendants move to dismiss Claim 1, arguing Plaintiff has wrongfully imputed the actions of third parties to Dominguez. ECF No. 8-1 at 17–19. Plaintiff further contends Plaintiff has insufficiently alleged malice and intent and that probable cause existed to effectuate Plaintiff's arrest. *Id.* at 15–17.

### a.    *Elements*

Federal courts look to state law to define the elements of a § 1983 malicious prosecution claim. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) ("We look to California law to determine the legal effect of the state court's action because we have incorporated the relevant elements of the common law tort of malicious prosecution into our analysis under § 1983."); *see also Rezek v. City of Tustin,* 684 F. App'x 620, 621 (9th Cir. 2017) ("[T]he elements of [plaintiff's] malicious prosecution claims are controlled by California state law."); *Womack v. Cnty. of Amador*, 551 F. Supp. 2d 1017, 1031 (E.D. Cal. 2008) ("A malicious prosecution claim under § 1983 is based on state law elements.").

Under California state law, "in order to establish a cause of action for malicious prosecution a plaintiff must plead and prove that the prior proceeding, commenced by or at the direction of the malicious prosecution defendant, was: (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice." *Villa v. Cole*, 4 Cal. App. 4th 1327, 1335 (Ct. App. 1992); *see also Soukup v. Law Offices of Herbert Hafif,* 39 Cal. 4th 260, 292 (2006).

In the Ninth Circuit, "the general rule is that a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy." *Usher v. Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "[A]n

exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Id.* at 562 (internal quotation marks omitted). "Put simply, malicious prosecution under Section 1983 requires a constitutional hook." *Krystal v. City of Carlsbad*, No. 22-CV-1329-BAS-JLB, 2023 WL 3829718, at *6 (S.D. Cal. June 5, 2023); *see Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) ("To maintain a § 1983 action for malicious prosecution, a plaintiff must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her [a] specific constitutional right.") (internal quotation marks omitted).

### b.    *Wrongful Imputation*

Defendants first argue Plaintiff's malicious prosecution claim should be dismissed because it improperly imputes the actions of the prosecutor, U.S. Marshals, and judges in his case to defendant Dominguez. ECF No. 8-1 at 17–19.

The Court does not agree. Here, the decisions of the prosecutor, U.S. Marshals, and judge in prosecuting Plaintiff, arresting him, and making bail determinations do not shield defendant Dominguez from potential liability. *See Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) ("A criminal defendant may maintain a malicious prosecution claim not only against prosecutors but also against others—including police officers and investigators—who wrongfully caused his prosecution.").

The Ninth Circuit's decision in *Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004), is instructive. In *Awabdy,* defendants—including a police officer—accused plaintiff of embezzling public funds. *Id.* at 1065. Defendants argued they were not liable for malicious prosecution because it was the District Attorney's office who prosecuted plaintiff. *Id.* at 1067. The Court of Appeals rejected this argument, holding:

> Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings. However, the presumption of prosecutorial independence

> does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings.

*Id.* (internal citation omitted).

Here, as in *Awabdy*, the involvement of the prosecutor, U.S. Marshals, and judge in Plaintiff's case does not foreclose Plaintiff's claim against defendant Dominguez, which is based on Dominguez's *own actions* in signing a criminal complaint and submitting an affidavit in support of Plaintiff's arrest. *See id.* at 1068 (holding plaintiff "may be able to prove that the defendants' knowingly false accusations and other similarly conspiratorial conduct were instrumental in causing the filing and prosecution of the criminal proceedings"); *see also Trulove v. City & Cnty. of San Francisco*, No. 16-050-YGR, 2016 WL 5930634, at *8 (N.D. Cal. Oct. 12, 2016) ("A claim for malicious prosecution may be stated not only against prosecutors but also police officers and investigators who wrongfully caused the plaintiff's prosecution, such as by knowingly providing misinformation, concealing exculpatory evidence, or otherwise engaging in wrongful conduct that was actively instrumental in causing the initiation of legal proceedings.") (internal quotation marks omitted).

### c.    *Probable Cause*

Defendants next contend Plaintiff's malicious prosecution claim is barred because defendant Dominguez had probable cause to obtain an arrest warrant even when the alleged deficiencies in his affidavit are corrected. ECF No. 8-1 at 17. The Court rejects this argument for the same reasons set forth in its discussion of Plaintiff's judicial deception claim above.

### d.    *Malice*

Defendants argue Plaintiff fails to sufficiently allege that defendant Dominguez acted with malice. ECF No. 8-1 at 15–17. Plaintiff responds that the FAC sufficiently

alleges that defendant Dominguez acted maliciously by instituting criminal proceedings for purposes other than the administration of justice. ECF No. 10 at 11.

In the malicious prosecution context, malice "'is not limited to actual hostility or ill will toward [the] plaintiff,' but also 'exists when proceedings are instituted primarily for an improper purpose'" such as when 'the person initiating [the charges] does not believe that his claim may be held valid.'" *Myles v. United States*, 47 F.4th 1005, 1014 (9th Cir. 2022) (quoting *Albertson v. Raboff*, 46 Cal. 2d 375, 383 (1956)).

Here, as detailed above, the FAC alleges defendant Dominguez knowingly made multiple misrepresentations and omissions in his affidavit supporting Plaintiff's arrest for the improper purpose of exerting pressure on Plaintiff's brother. FAC ¶¶ 54–55, 79. At this early stage of the proceedings, these allegations are sufficient to plead malice. *See Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002) (holding allegations defendant coroner recklessly disregarded truth and deliberately lied in his autopsy report adequately supported a malicious prosecution claim); *Greene v. Bank of Am.,* 216 Cal. App. 4th 454, 464–65 (2013) ("[I]f the defendant had no substantial grounds for believing in the plaintiff's guilt, but, nevertheless, instigated proceedings against the plaintiff, it is logical to infer that the defendant's motive was improper."); *see also Trulove*, 2016 WL 5930634, at *8 (allegation officers acted to fabricate or suppress evidence which was instrumental in causing initiation of murder prosecution sufficient to state a claim for malicious prosecution). Based on the foregoing, Plaintiff has also sufficiently alleged that defendant Dominguez signed the criminal complaint and submitted his affidavit with the intent to deprive Plaintiff of a constitutional right. *See Miller v. Schmitz*, No. 1:12-CV-00137-LJO, 2012 WL 1609193, at *7 (E.D. Cal. May 8, 2012) (holding "the same facts showing" that an officer defendant "maliciously caused" a plaintiff "to be arrested and prosecuted without probable cause" supported a showing that the officer "intended" to violate plaintiff's Fourth Amendment rights.").

### e.    Conclusion

For these reasons, the Court **DENIES** Defendants' motion to dismiss Claim 1.

### 4.    *Unlawful Seizure (Claim 3)*

In Claim 3 of the FAC, Plaintiff asserts an unlawful seizure claim against defendant Dominguez based on Plaintiff's arrest and pretrial detention. FAC ¶¶ 86–91. Defendants move to dismiss Claim 3, arguing Plaintiff has wrongfully imputed the actions of the judge and prosecutor in his case to Dominguez and that his arrest was supported by probable cause. ECF No. 8-1 at 26–28.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures.'" *Manuel*, 580 U.S. at 364 (quoting U.S. Const. amend. IV). "[T]hose objecting to a pretrial deprivation of liberty may invoke the Fourth Amendment when (as here) that deprivation occurs after legal process commences." *Id.* at 366.

Defendant first argues Plaintiff has improperly attributed the actions of the prosecutor and judge in his case onto defendant Dominguez. This argument is unpersuasive for the same reasons set forth above. The involvement of the prosecutor and judge in Plaintiff's case does not, by itself, insulate defendant Dominguez from § 1983 liability in cases such as this one where Plaintiff has alleged the judge's probable cause determination was predicated on Defendant's misleading representations and omissions.

As the Supreme Court has reasoned:

> [A Fourth Amendment claim] can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification. *Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement.* And for that reason, it cannot extinguish the detainee's Fourth Amendment claim.

*Manuel*, 580 U.S. at 367 (emphasis added); *see also Awabdy*, 368 F.3d at 1067.

Defendant next argues defendant Dominguez had probable cause to obtain an arrest warrant even if any deficiencies in his affidavit were corrected. ECF No. 8-1 at 26–27. The Court also rejects this argument for the same reasons already set forth above.

1    For these reasons, the Court **DENIES** Defendants' motion to dismiss Claim 3.

2    ### 5.    *Qualified Immunity*

3    Defendants contend defendant Dominguez is entitled to qualified immunity on all of
4    Plaintiff's § 1983 claims. ECF No. 8-1 at 30–32. Plaintiff responds the question of whether
5    Dominguez is entitled to qualified immunity is better resolved at a later stage on a more
6    developed record. ECF No. 10 at 20–23. In the context of the allegations here, the Court
7    agrees with Plaintiff.

8    "The doctrine of qualified immunity protects government officials 'from liability for
9    civil damages insofar as their conduct does not violate clearly established statutory or
10   constitutional rights of which a reasonable person would have known.'" *Pearson v.*
11   *Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818,
12   (1982)). The doctrine of qualified immunity "is more than a 'mere defense to liability,'"
13   but is "a complete *immunity from suit*" which is "effectively lost if a case is erroneously
14   permitted to go to trial." *Mueller v. Auker*, 576 F.3d 979, 987 (9th Cir. 2009) (emphasis in
15   original). To determine whether government officials are entitled to qualified immunity,
16   courts conduct a two-step inquiry. First, courts consider "whether the facts that a plaintiff
17   has alleged make out a violation of a constitutional right[.]" *Martinez v. City of Clovis*, 943
18   F.3d 1260, 1270 (9th Cir. 2019). Second, courts consider "whether that right was clearly
19   established at the time of the incident." *Id.* Courts have discretion "in deciding which of
20   the two prongs of the qualified immunity analysis should be addressed first in light of the
21   circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

22   Here, as a matter of pleading, Plaintiff has sufficiently alleged the violation of a
23   constitutional right that was clearly established at the time of the incident. *See Green v.*
24   *City & Cty. of S.F.*, 751 F.3d 1039, 1052 (9th Cir. 2014) ("It was established at the time of
25   the incident that individuals may not be subjected to seizure or arrest without reasonable
26   suspicion or probable cause[.]"); *Chism v. Washington*, 661 F.3d 380, 393 (9th Cir. 2011)
27   ("[E]very reasonable official would have understood that [plaintiffs] had a constitutional
28   right to not be . . . arrested as a result of judicial deception."); *Devereaux v. Abbey*, 263

17

F.3d 1070, 1074–75 (9th Cir. 2001) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991) ("[I]f an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, . . . he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost.") (internal quotation marks omitted).

The Court does not address the strength of the evidence supporting Defendants' qualified immunity defense at this stage. As the Ninth Circuit has held:

> If the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, *then plaintiffs are entitled to go forward with their claims*. But our decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity were the case permitted to proceed, at least to the summary judgment stage and the court is presented with facts providing context for the challenged actions.

*Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (internal quotation marks and citation omitted) (emphasis added). Under the circumstances of this case, where Defendant has argued that there is insufficient factual evidence supporting Plaintiff's allegations, ECF No. 8-1 at 23, the question of whether defendant Dominguez is entitled to qualified immunity is more appropriately reserved for a later stage of these proceedings. *See O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) ("Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity."); *see also Young v. Williams*, No. 22-CV-00125-AJB-KSC, 2025 WL 2200735, at *9 (S.D. Cal. Aug. 1, 2025) (finding it "premature" to conduct a "fact intensive" qualified immunity analysis at the motion to dismiss stage).

For these reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff's § 1983 claims on qualified immunity grounds.

**B.    Bane Act Claim**

In Claim 4 of the FAC, Plaintiff alleges defendant Dominguez's initiation of a criminal prosecution without probable cause constitutes a violation of California's Bane Act, Section 52.1 of the California Civil Code. FAC ¶¶ 92–100.[7] Defendants move to dismiss Claim 4, arguing Plaintiff's claim is time barred, that Defendants are immune from Plaintiff's claim under California Government Code § 820.2, and that Plaintiff has failed to sufficiently plead Dominguez acted with the specific intent to violate Plaintiff's constitutional rights ECF No. 8-1 at 13–14, 28–30, 32. The Court addresses the arguments, in turn, below.

*1.    Elements*

The Bane Act "civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation or coercion." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (internal quotation marks omitted). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., threats, intimidation or coercion), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Cornell v. City & Cty. of S.F.*, 17 Cal. App. 5th 766, 791–92 (Ct. App. 2017) (internal quotation marks omitted). "There are two distinct elements for a section 52.1 cause of action." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (Ct. App. 2015). "A plaintiff must show (1) intentional interference or attempted interference with a state or federal

---

[7]    Plaintiff's Bane Act claim is asserted against both Dominguez and the City. *See Gant v. Cty. of L.A.*, 772 F.3d 608, 623 (9th Cir. 2014) ("Under California law, public entities are liable for actions of their employees within the scope of employment, but public entities are immune from liability to the extent their employees are immune from liability[.]") (internal citations omitted); *Astorga v. Cnty. of San Diego*, No. 321CV00463BENKSC, 2022 WL 1556164, at *3 (S.D. Cal. May 17, 2022) ("[F]ederal courts have held that public entities can be sued for vicarious liability under California civil rights statutes.").

constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Id.*

### 2. Timeliness

Defendants argue Plaintiff's Bane Act claim is time barred under California's Government Claims Act. ECF No. 8-1 at 13–14.

"The Government Claims Act (§ 810 et seq.) establishes certain conditions precedent to the filing of a lawsuit against a public entity." *Coble v. Ventura Cty. Health Care Agency*, 73 Cal. App. 5th 417, 421 (Ct. App. 2021) (internal quotation marks omitted). The Act provides that a claim for personal injury must be presented to the entity not later than six months after the accrual of the cause of action. *Id.*; *Lehman v. Orange Cnty. Sheriff's Dep't*, No. SA CV 24-2520-JLS (AGR), 2025 WL 2020061, at *6 (C.D. Cal. Apr. 25, 2025) ("California's Government Claims Act provides that a claim for personal injury or property damages against a public entity must be presented to that entity within six months of accrual.").

Defendants first contend that because Plaintiff's Bane Act claim is predicated on an alleged act of judicial deception, it would have accrued on or about April 12, 2024—the day after his arrest—when the underlying affidavit for his arrest became reasonably available. ECF No. 8-1 at 13. On this basis, Defendants argue Plaintiff's Bane Act claim is time barred as Plaintiff did not file a claim with the City of Chula Vista until November 29, 2024—over seven months later. *Id.* at 14. It is true "judicial deception claims begin accruing when the underlying affidavit is reasonably available." *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278–79 (9th Cir. 2017). Here, however, the record is silent as to when Plaintiff obtained, or through reasonable diligence could have obtained, the affidavit underlying his arrest. On the present record, the Court cannot therefore determine whether Plaintiff's judicial deception Bane Act claim is untimely.

The Court also agrees with Plaintiff that his Bane Act claim would not be untimely to the extent it is based on malicious prosecution. "[M]alicious prosecution claims do not accrue until the underlying prosecution terminates in favor of the plaintiff." *Braunstein v.*

*U.S. Postal Serv.*, No. 05-16390, 2007 WL 1112620, at *1 (9th Cir. Apr. 12, 2007); *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1060 (9th Cir. 2002) ("[A] claim of malicious prosecution does not accrue until the plaintiff is acquitted, because acquittal is an element of the claim."); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998) ("[Plaintiff]'s malicious prosecution claim did not accrue until his acquittal[.]"). Here, the FAC indicates Plaintiff's Bane Act claim is at least partially based on malicious prosecution. *See e.g.*, FAC ¶¶ 93 ("This wrongful conduct also constitutes a malicious prosecution and unlawful detention[.]"); 97 ("[Plaintiff] had the right to be free from malicious prosecution[.]"). As Plaintiff's malicious prosecution claim did not accrue until around July 10, 2024, this claim is timely.

### 3. *Immunity under California Government Code § 820.2*

Defendants next argue they are immune from Plaintiff's Bane Act claim under California Government Code §§ 820.2 and 815.2.

"Sections 815.2 and 820.2 are a part of the California Tort Claims Act, and limit public employees' liability for claims arising out of that act." *Rattray v. City of Nat'l City*, 51 F.3d 793, 798 (9th Cir. 1994). Under California Government Code § 820.2, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. "Section 815.2 is derivative: [i]t provides that if a public employee is immune from liability for a particular act or omission, the public employer is similarly immune from liability." *Eng v. Cnty. of Los Angeles*, No. CV0502686MMMSSX, 2006 WL 8442227, at *20 (C.D. Cal. June 14, 2006). "[T]he burden rests with government defendants to demonstrate that they are entitled to § 820.2 immunity[.]" *AE v. Cty. of Tulare*, 666 F.3d 631, 640 (9th Cir. 2012).

Here, Defendants have not met their burden of demonstrating they are entitled to § 820.2 immunity. As the Ninth Circuit has held in similar circumstances:

> A workable definition of immune discretionary acts draws the line between planning and operational functions of government. Immunity

is reserved for those *basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government, and as to which judicial interference would thus be unseemly. *A police officer's decision to detain or arrest a suspect is not a basic policy decision, but only an operational decision by the police purporting to apply the law.*

*Liberal v. Estrada*, 632 F.3d 1064, 1084–85 (9th Cir. 2011) (internal quotation marks and citations omitted) (emphasis added); *Gonzalez v. City of Alameda*, No. 21-CV-09733-DMR, 2023 WL 6232239, at *22 (N.D. Cal. Sept. 22, 2023) ("Section 820.2's discretionary immunity does not apply to the decision to arrest an individual when there is no probable cause[.]").

Defendants contend that a police officer's decision to interfere with a person's liberty in a manner short of arrest constitutes a discretionary act under the California Court of Appeal's decision in *Michenfelder v. City of Torrance*, 28 Cal. App. 3d 202 (Ct. App. 1972). ECF No. 8-1 at 32. However, the facts of *Michenfelder* are distinguishable from the instant case. In *Michenfelder*, the plaintiffs were in possession of a retail shop when individuals entered their store without consent and removed and damaged certain items. *Michenfelder*, 28 Cal. App. 3d at 204. The question before the California Court of Appeal was whether the plaintiffs could state a claim against defendant police officers for their alleged failure to take preventive action short of arrest. *Id.* at 206. In contrast, here, defendant Dominguez allegedly prepared an affidavit in support of Plaintiff's arrest without probable cause. This act is more analogous to the Ninth Circuit's reasoning in *Liberal* that an officer's decision to arrest a suspect is operational than the conduct at issue in *Michenfelder*. Accordingly, the Court declines to dismiss Plaintiff's Bane Act claim on this basis.[8]

///

---

[8]    Defendants also cite California Government Code § 820.8 as a source of immunity from Plaintiff's Bane Act claim, but provide no explanation as to its applicability. *See* ECF No. 8-1 at 32. The Court therefore declines to consider this argument.

### 4. Failure to State a Claim

Defendants finally argue Plaintiff has failed to plausibly allege defendant Dominguez acted with requisite specific intent to support a Bane Act violation. ECF No. 8-1 at 28–30.

California Bane Act claims require "the specific intent to deprive a person of constitutional rights[.]" *Nehad v. Browder*, 929 F.3d 1125, 1142 n.15 (9th Cir. 2019); *see Schmid v. City & Cty. of S.F.*, 60 Cal. App. 5th 470, 483 (Ct. App. 2021) ("Any arrest without probable cause involves coercion, and where accompanied by evidence of specific intent to violate the arrestee's Fourth Amendment rights, such an arrest may provide the basis for a Bane Act claim."); *Cornell*, 17 Cal. App. 5th at 801 ("[T]he egregiousness required by Section 52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure.").

"The specific intent inquiry for a Bane Act claim is focused on two questions: First, '[i]s the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and second, '[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (quoting *Cornell*, 17 Cal. App. 5th at 803). "So long as those two requirements are met, specific intent can be shown 'even if the defendant did not in fact recognize the unlawfulness of his act' but instead acted in 'reckless disregard' of the constitutional right." *Id.*

Here, as discussed above, Plaintiff alleges that Dominguez made multiple material misrepresentations and omissions in an affidavit supporting Plaintiff's arrest—while deliberately disregarding the lack of evidence supporting Plaintiff's arrest—for the purpose of exerting pressure on Plaintiff's brother. FAC ¶¶ 54–55, 79, 94. At this stage of the proceedings, Plaintiff's allegations are sufficient to state a plausible claim that Dominguez acted with reckless disregard of Plaintiff's Fourth Amendment rights. *See Freeman v. Stater Bros. Markets*, No. CV 24-1604-KK-MAAX, 2025 WL 574696, at *2 (C.D. Cal.

Jan. 23, 2025) (holding plaintiff had sufficiently alleged a Bane Act claim premised upon allegations that defendants had lied and conspired to effectuate his unlawful detention and arrest); *Luna v. Cnty. of Riverside*, No. EDCV 21-0467 JGB (SPX), 2023 WL 7803386, at *15 (C.D. Cal. Oct. 20, 2023) ("Effectuating an arrest, while knowing there is no longer probable cause, shows a reckless disregard for Plaintiff's right to be free of unreasonable seizure."); *Redick v. Lowe's Home Centers, LLC*, No. 121CV00358NONESABPC, 2021 WL 3418728, at *6 (E.D. Cal. Aug. 5, 2021) ("Liberally construed Plaintiff has stated a cognizable Bane Act violation against [defendant] based on the alleged false accusation that he committed a crime . . . which lead to his arrest and detention."); *Holland v. City of San Francisco*, No. C10-2603 TEH, 2013 WL 968295, at *10 (N.D. Cal. Mar. 12, 2013) (reasoning that "an arrest without probable cause" is "brought about by intentional conduct").

### 5. *Conclusion*

For the reasons above, the Court **DENIES** Defendants' motion to dismiss Claim 4.

### C. **Doe Defendants**

Defendants request that the Court dismiss the Doe defendants from this case. ECF No. 8-1 at 33. Plaintiff argues that the dismissal of any Doe defendants in this case is premature before Plaintiff has had an opportunity to take discovery. ECF No. 10 at 24–25.

"As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Nevertheless, the Ninth Circuit has recognized that "situations arise . . . where the identity of alleged defendants will not be known prior to the filing of a complaint." *Id.* "In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*

"To plead a claim against a [D]oe defendant in the Section 1983 context, a plaintiff must specifically identify individual conduct that led to an alleged constitutional violation." *Clinton v. Allen*, No. 3:23-CV-01471-CAB-SBC, 2025 WL 1447389, at *1 (S.D. Cal. May

20, 2025); s*ee Lomeli v. Cty. of San Diego*, 637 F. Supp. 3d 1046, 1057 (S.D. Cal. 2022) ("Plaintiffs may refer to unknown defendants as 'Does' at this stage, [but] must nevertheless allege specific facts showing how each particular doe defendant violated [their] rights.") (internal quotation marks omitted); *Keavney v. Cnty. of San Diego*, No. 319CV01947AJBBGS, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020) ("'A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular [D]oe defendant violated his rights.'") (internal quotation marks omitted).

Here, Plaintiff's only allegations against the Doe defendants are that they are "law enforcement officers or other individuals whose actions or omissions violated [Plaintiff]'s constitutional rights and caused him injury or harm by facilitating [his] malicious prosecution." FAC ¶ 21. These allegations are too vague and conclusory to plausibly demonstrate how any particular Doe defendant personally participated in or caused the alleged constitutional violation. *See Est. of Bergner v. San Mateo Cnty. Sheriff's Off.*, No. 24-CV-08596-CRB, 2025 WL 1707289, at *4 (N.D. Cal. June 18, 2025) ("Though a plaintiff is entitled to plead causes of action in the alternative, a plaintiff cannot create a chimera of a Doe defendant—especially not without any factual allegations in support. If Plaintiffs want to sue defendants whose names are yet unknown, they must identify a specific factual basis for doing so."); *Lomeli*, 637 F. Supp. 3d at 1058 (holding allegations that a group of doe defendants had "detained [plaintiff] without reasonable suspicion and arrested him without probable cause" and another group had deprived plaintiff of his rights under "Fourth and Fourteenth Amendment by acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general" were insufficient).

For these reasons, the Court **GRANTS** Defendants' motion to dismiss the Doe defendants from this case **WITH LEAVE TO AMEND.**

///

///

## IV.    MOTION FOR A MORE DEFINITE STATEMENT

Defendants also alternatively request that Plaintiff be ordered to provide a more definite statement under Federal Rule of Civil Procedure 12(e). ECF No. 8-1 at 33. Aside from this conclusory request, however, Defendants provide no supporting argument or citation in support. In the absence of any meaningful argument, the Court **DENIES** Defendants' alternative request.

## V.    CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' motion to dismiss as follows:

1.    The Court **DENIES** Defendants' motion to dismiss Claim 1.

2.    The Court **GRANTS** Defendants' motion to dismiss Claim 2, to the extent Claim 2 is based on a violation of the Fourteenth Amendment **WITHOUT LEAVE TO AMEND.** The Court **DENIES** Defendants' motion to dismiss Claim 2 in all other respects.

3.    The Court **DENIES** Defendants' motion to dismiss Claim 3.

4.    The Court **DENIES** Defendants' motion to dismiss Claim 4.

5.    The Court **GRANTS** Defendants' motion to dismiss the Doe defendants from this case **WITH LEAVE TO AMEND.**

6.    The Court **DENIES** Defendant's alternative motion for a more definite statement.

**IT IS SO ORDERED.**

Dated: October 24, 2025

Robert S Huie
_____
Hon. Robert S. Huie
United States District Judge